## MARSHALL v. ∘WENNINGER.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

EASEMENT—EXTINGUISHMENT.

Where the easement in an alley, of adjoining lots, is extinguished by conveyances for that purpose by the lot owners, the owners of other lots on the plat have no interest in such alley.

Appeal from trial term.

Action by Oscar T. Marshall against John P. Wenninger. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

H. A. Forster, for appellant.
Edward Kaufman, for respondent.

VAN BRUNT, P. J. On the 19th of June, 1895, the plaintiff and defendant entered into an agreement, in writing, whereby the defendant agreed to sell, and the plaintiff agreed to purchase, certain premises described in the complaint. Upon the execution and delivery of the agreement, the plaintiff paid $500, and agreed to complete the purchase on the 26th day of August, 1891. The plaintiff alleges that at the time fixed for closing the title the premises were subject to incumbrances not included in said contract, nor disclosed to the plaintiff at the time of the making of said contract, namely, that the said premises were subject to certain easements of lot owners in the neighborhood of the premises sold. This action was thereupon commenced to recover the said deposit, and the counsel fees for examining the title.

It appears that in 1851 Benjamin Brown and Darius Lyon owned adjoining farms in Belmont village, in Westchester county. Each of these farms included a part of the property in question. In 1852 Brown and Lyon filed a map of their farms in the office of the clerk of Westchester county. This map plotted the property into 184 lots, which were divided into 22 blocks by a number of so-called avenues and streets. An alley 50 feet wide, called "Calhoun Terrace," was · laid out upon the map through one of these blocks, which contained only four lots,—lot No. 70 on the northerly side, and lots Nos. 71,

72, and 73 on the southerly side. All of these lots faced either upon a public highway, or upon one of the avenues laid out upon said map; and this alley seems to have been intended as an approach to the rear of the lots Nos. 70 to 73, inclusive. The easterly opening of said alley was upon Jackson avenue, across which avenue, opposite the alley, is a portion of lot No. 97; and on the westerly end was Monroe avenue, across which, opposite the alley, is lot No. 53 upon said map. These lots front on avenues which lead directly to a public highway. None of the lots on said map, except those above enumerated, are in any manner contiguous to the alley in question. The lots were sold by Brown by the lot numbers shown upon said map, and with reference thereto. Lots 70, 71, 72, and 73 belonged to Brown, except a strip of about 16 feet wide on the westerly side of lots Nos. 70 and 71, and crossing the alley called "Calhoun Terrace," as laid down on the map, which belonged to Lyon. On the 3d of August, 1852, Brown conveyed his part of lot No. 70 to Lyon, and on the same day conveyed to one Kayser lots Nos. 72 and 73, and his part of lot No. 71, "and also all the land in Calhoun terrace, leading from Jackson avenue, until it comes to said Lyon's land, aforesaid, as the same are laid down on said map." By the same deed, Brown conveyed to Kayser a number of lots in his portion of the tract, and also all the land in the six avenues running through his portion of the tract, until they each come to the land of said Lyon, "subject, however, to the right of way over the said avenues to the several persons who have purchased lots laid down on said map, their heirs and assigns, forever." In February, 1853, Brown quitclaimed and released to Kayser all his right of way over the land formerly owned by him in Calhoun terrace. In October, 1853, Kayser conveyed to Lyon, by warranty deed, the part of the northerly half of Calhoun terrace which had been conveyed to him by Brown. Lyon thereby acquired the title to lot No. 70 and the bed of the road, free and clear from all rights vested in the owners of lots 71, 72, and 73. By various mesne conveyances from Lyon, the title to lot 70, and to the northerly half of Calhoun terrace, became vested in the defendant in July, 1887; and the question presented is whether any right of way or easement remained in other lot owners. It is clear that all the rights of abutting owners had been extinguished. Kayser, the owner of part of lot 71, and the owner of lots 72 and 73, conveyed to Lyon, the owner of lot 70 and of the balance of lot 71, the northerly half of Calhoun terrace, by warranty deed, reserving no rights whatever. Lyon thus acquired the title to the northerly half of the terrace, relieved from any easements in favor of the abutting lots Nos. 72 and 73, and the part of lot 71 owned by Kayser; and when he conveyed lot 70, with the northerly half of the terrace, to the defendant, the defendant took it relieved from any of the rights or easements of any of the abutting owners.

The question then remains as to whether the owners of all the other lots represented upon this map acquired an easement over this alley called "Calhoun Terrace." It seems clear that they did not. All that was acquired because of the plotting of this lot and the

avenues, and the sale of the lots by this map, was an easement of light, air, and access to other lots over the avenues and alley represented upon said map. Calhoun terrace was a means of access, and of furnishing light and air, only to the rear of lots 70, 71, 72, and 73. All the other lots fronted upon other avenues. Their means of access was undoubtedly intended to be shown on this map by these avenues. But it is said that the rear of lot 97 is opposite one opening of the terrace, and a part of lot 53 is opposite the other opening of the terrace, as shown on the map, and that this gave additional means of access between these two lots. But it is apparent, upon an inspection of the map, that the alley in question was not intended for any such purpose. These last-mentioned lots had a means of access through the avenues upon which they fronted; and because upon the opposite side of such avenues there was represented a strip running in the rear of certain lots, and forming access to the rear of such lots, which strip was but a short distance from the wide avenue, it cannot be maintained that there was any intention to create an easement in favor of the avenue lots over this strip or alley. It would seem, upon a consideration of the situation of these lots, that there was no intention, in respect to this terrace, to convey any easement over the lots embraced therein, except as affecting lots Nos. 70, 71, 72, and 73.

The other questions which have been raised upon the brief of counsel, it is not necessary to consider, in view of the conclusion at which we have arrived as to the main question,—that no easement of light, air, and access over Calhoun terrace was vested in the other lots laid out upon said map, and therefore the title of the defendant to the premises in question is good.

The judgment should be reversed, and the complaint dismissed, with costs. All concur.